### AGNEW, (LELAND v.)
[See Leland v. Agnew, Case No. 8,236.]

---

### AGRY, (WALLACE v.)
[See Wallace v. Agry, Case No. 17,097.]

---

### AGUILLA, The.
[See The Aquila, Case No. 500.]

---

## Case No. 101.
### AGUIRRE v. MAXWELL.
[3 Blatchf. 140.][1]

Circuit Court, S. D. New York. Dec., 1853.

CONSTITUTIONAL LAW—TONNAGE DUTY ON FOREIGN VESSELS—DUTIES ON EXPORTS.

1. The provision of the constitution of the United States, (article 1, § 9,) that "no tax or duty shall be laid on articles exported from any state," does not apply to the imposition of taxes on foreign vessels.

2. The act of June 30th, 1834, (4 Stat. 741,) concerning tonnage duty on Spanish vessels, is constitutional.

¹[Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

3. The method of determining the amount of such tonnage duty is wholly within the discretion of congress.

This cause was brought into this court by certiorari, from the supreme court of New York. It was an action [by Peter A. Aguirre and others] against [Hugh Maxwell] the collector of the port of New York, to recover back an excess of duty. The plaintiffs, in November, 1851, exported to Cuba a cargo of domestic produce, in a Spanish brig, of 147 63-95 tons burthen. The collector imposed $363 13 extra tonnage duty, which was paid by the plaintiffs under a protest in writing against the charge, "because, under the constitution and laws of the United States, such exactions are illegal."

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. The duty in this case was levied under the act concerning tonnage duty on Spanish vessels, approved June 30, 1834, (4 Stat. 741.) The first section enacts "that from and after the first day of March next, Spanish vessels coming from the island of Cuba or Porto Rico, either directly or after touching at any port or place, shall pay, in the ports of the United States, such further tonnage duty, in addition to the tonnage duty which may be payable under any other law, as shall be equivalent to the amount of discriminating duty that would have been imposed on the cargoes imported in the said vessels respectively, if the same had been exported from the port of Havana in American bottoms." The second section provides "that, before any such vessel shall be permitted to clear out. or depart from a port of the United States, with a cargo which shall be directly or indirectly destined to either of the said islands, the said vessel shall pay such further tonnage duty as shall be equivalent to the amount of discriminating duty that would be payable for the time being upon the cargo, if imported into the port of Havana in an American bottom."

It is not questioned that this vessel came within the terms of that statute, nor that the amount of duty charged was correct, if there was authority of law to justify its being levied. The provision of the constitution, (article 1, § 9,) that "no tax or duty shall be laid on articles exported from any state," does not apply to the imposition of taxes on foreign vessels. It is within the discretion of congress to totally inhibit the import or export trade in foreign vessels to or from our ports, or to grant them the privilege of bringing in or carrying out cargoes on such conditions and under such restrictions as may be regarded most beneficial to the United States. Congress has never revoked the legislation of 1834 in this respect. On the contrary, the act of August 3, 1846, (9 Stat. 50,) reaffirms the discrimination in relation to vessels coming from Cuba to Porto Rico. As the power exists, to impose the duty on vessels, the method of determining the amount, whether to be measured by the rate of taxation the cargo would be subjected to, if coming from Cuba or Porto Rico, or by the value of the ship or cargo, in gross or on a ratio estimated, as with domestic vessels, by the capacity of the vessel alone, is at the discretion of congress.

We think there is no foundation in law for the exception taken to the levy of the tonnage duty in this case. Judgment for defendant.